UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARLIN DAVIS | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1698 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS et al. | ) | |
| | ) | |
| Defendants | ) | |
| _____ _____ | ) | |

**MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendants respectfully submit this motion to dismiss Plaintiff's complaint pursuant to

F.R. Civ. P. 12(b)(1), (b)(3), and (b)(6), or in the alternative for summary judgment pursuant to

F.R.Civ.P. 56.  This motion is accompanied by a statement of material facts, memorandum of

points and authorities and proposed order.

Plaintiff should take notice that any factual assertions contained in the affidavits and

other attachments in support of defendant's motion will be accepted by the Court as true unless

the Plaintiff submits his own affidavits or other documentary evidence contradicting the

assertions in the defendants' attachments.  *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992),

Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit

1

affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar# 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARLIN DAVIS | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-1698 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**STATEMENT OF MATERIAL FACTS**

Defendants respectfully submit this statement of material facts as to which there is no genuine issue:

1. Pro se Plaintiff Marlin Davis is a federal prisoner incarcerated in the Federal Correctional Institution in Estill, South Carolina. Complaint at p. 1.

2. On February 13, 2006, Plaintiff filed a Request for Administrative Remedy in which he requested the BOP to correct some allegedly incorrect information within his PSI. See Complaint at Plaintiff's Appendix A. Plaintiff asserted: "The unresolved controverted matters listed in the Presentence Report direct (sic) affects the length of sentence." *Id*. Plaintiff listed the controverted paragraphs as numbers 66, 67, 70, and 73. *Id.*

3. On March 21, 2006, the Warden responded to Plaintiff's request and informed him that the BOP cannot change his PSI and that only the sentencing court could order a change or amendment to the PSI. *Id*.

4. On March 27, 2006, Plaintiff filed a Regional Administrative Remedy Appeal

3

appealing the Warden's decision.  See Plaintiff's Exhibit B.

5.  On April 24, 2006, the Southeast Regional Director responded to Plaintiff's appeal and informed him his concerns had been referred to the USPO in writing in accordance with applicable policy.  Id.

6.  By letter dated April 12, 2006, Plaintiff's Case Manager contacted the Probation Office (USPO) and informed them that Plaintiff was requesting that allegedly inaccurate information contained within his PSI be amended.  Plaintiff's Exhibit C. and Smith Dec. at ¶10.

7.  By letter dated April 26, 2006, the USPO responded to Plaintiff's Case Manager and indicated that prior to sentencing Plaintiff's attorney had filed objections to the portions of the PSI Plaintiff was now contesting and the sentencing court had adopted the PSI as written.  *Id.* The USPO also indicated they had no authority, absent an order from the court, to amend Plaintiff's PSI.  *Id.*

8.  Based on the information provided by the USPO Plaintiff's severity classification was not altered.  Smith Dec. at ¶11.  However, all of the information provided by Plaintiff and the USPO was placed in his file.  *Id.*

9.  On June 1, 2006, Plaintiff filed a Central Office Administrative Remedy Appeal appealing the Southeast Regional Director's decision.  See Plaintiff's Exhibit C.  In this appeal Plaintiff asserted that simply writing the USPO and placing their response in his file was not enough to satisfy the requirements of the Privacy Act since the information he alleged was inaccurate could be verified.  *Id.*

10.  On August 11, 2006, the National Inmate Appeals Coordinator responded to Plaintiff's appeal and indicated the actions taken by staff were appropriate and in compliance with policy.  *Id.*

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar# 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARLIN DAVIS                          )
                                      )
                    Plaintiff,        )      Civil Action No. 06-1698 (CKK)
                                      )
        v.                            )
                                      )
FEDERAL BUREAU OF PRISONS et al.      )
                                      )
                    Defendant.        )
_____     )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Pro se Plaintiff Marlin Davis is a federal prisoner incarcerated in the Federal Correctional

Institution in Estill, South Carolina. Complaint at p. 1.

The Plaintiff claims that his pre-sentence report (PSR) contains inaccurate information

concerning the amount of drugs (cocaine and cocaine base) he was involved in distributing.  *See*

Complaint at pp. 1-2, 4-6.   He contends that excerpts from the transcripts of witnesses who

testified at his trial do not support the amount of drugs reflected in the PSR.  *Id.*

He claims that the Bureau of Prisons is using the allegedly inaccurate information in his

PSR to determine custody and security classifications.  *Id.* at p. 1.   In Plaintiff's Inmate Request

dated February 13, 2006, Plaintiff asserted that "If these paragraphs [of the PSR] were corrected

the length of sentence would be reduced."  Complaint at Appendix A.

Plaintiff has requested injunctive relief  "to order the USPO to verify the information

contained in Plaintiff's PSR using the trial transcripts and stop the BOP from using the inaccurate

information until varifications (sic) can be made." Complaint at p. 7.  Plaintiff has not requested

monetary damages.

## BACKGROUND

The Plaintiff, Marlin Davis, Register Number 30704-004, was sentenced on June 3, 1996, to a 360 month term of imprisonment by the United States District Court for the Northern District of Florida, for Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine, Cocaine Base, and Marijuana (21 U.S.C. § 846).  See Exhibit 1, Judgment and Commitment Order.  He is currently incarcerated at the Federal Correctional Institution (FCI) Estill, South Carolina, and has a projected release date of November 17, 2021, via Good Conduct Time (GCT) Release. Smith Dec. at ¶3.

After a defendant is sentenced by a federal court to a term of imprisonment, the BOP is tasked with insuring each inmate is placed in a facility commensurate with security and program needs.  *Id*. at ¶4.  The BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification, provides instructions for designating inmates to institutions according to security level, and for assigning custody classifications.  *Id.* and Exhibit 7.  Pursuant to Program Statement 5100.08, to determine the severity of the current offense, staff are to enter the appropriate number of points that reflect the most severe documented instant offense behavior regardless of the conviction offense.  Exhibit 7.  Severity is determined by using the Offense Severity Scale (Appendix A).  Smith Dec. at ¶6.

When determining the severity of drug offenses, the total amount of drugs attributed to the defendant is also considered.  *Id*.  According to Plaintiff's PSI,  he had been attributed with 1.5 kilograms or more of cocaine base. *Id.* at ¶7.  Thus, the most appropriate severity was that of a "moderate severity" which is the offense of Cocaine greater than or equal to 400 grams, .4

2

kilograms, or .88 pounds.  *Id.*

On February 13, 2006, Plaintiff filed a Request for Administrative Remedy in which he requested the BOP to correct some allegedly incorrect information within his PSI.  See Complaint at  Appendix A.  Plaintiff asserted: "The unresolved controverted matters listed in the Presentence Report direct (sic) affects the length of sentence."  *Id.*  Plaintiff listed the controverted paragraphs as numbers 66, 67, 70, and 73.  *Id.*  On March 21, 2006, the Warden responded to Plaintiff's request and informed him that the BOP cannot change his PSI and that only the sentencing court could order a change or amendment to the PSI.  *Id.*

On March 27, 2006, Plaintiff filed a Regional Administrative Remedy Appeal appealing the Warden's decision.  See Plaintiff's Exhibit B.  On April 24, 2006, the Southeast Regional Director responded to Plaintiff's appeal and informed him his concerns had been referred to the USPO in writing in accordance with applicable policy.  *Id.*

By letter dated April 12, 2006, Plaintiff's Case Manager contacted the Probation Office (USPO) and informed them that Plaintiff was requesting that allegedly inaccurate information contained within his PSI be amended.  Plaintiff's Exhibit C. and Smith Dec. at ¶10.  By letter dated April 26, 2006, the USPO responded to Plaintiff's Case Manager and indicated that prior to sentencing Plaintiff's attorney had filed objections to the portions of the PSI Plaintiff was now contesting and the sentencing court had adopted the PSI as written.  *Id.*  The USPO also indicated they had no authority, absent an order from the court, to amend Plaintiff's PSI.  *Id.*

Based on the information provided by the USPO which did not support plaintiff's allegations, his severity classification was not altered.  Smith Dec. at ¶11.  However, all of the information provided by plaintiff and the USPO was placed in his file.  *Id.*

3

On June 1, 2006, Plaintiff filed a Central Office Administrative Remedy Appeal appealing the Southeast Regional Director's decision. See Plaintiff's Exhibit C. In this appeal Plaintiff asserted that simply writing the USPO and placing their response in his file was not enough to satisfy the requirements of the Privacy Act since the information he alleged was inaccurate could be verified. *Id*. On August 11, 2006, the National Inmate Appeals Coordinator responded to Plaintiff's appeal and indicated the actions taken by staff were appropriate and in compliance with policy. *Id.*

## ARGUMENT

### Standard of Review

"[A] complaint should . . . be dismissed for failure to state a claim [if] it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding a motion to dismiss under Rule 12(b)(6), facts alleged in the complaint must be presumed true and be liberally construed in favor of the plaintiff. *See, e.g., Shear v. NRA*, 606 F.2d 1251, 1253 (D.C. Cir. 1979). The court may consider certain additional evidence in deciding the motion. *See Arizmendi v. Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) ("In resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims for lack of subject-matter jurisdiction. Plaintiff has the burden to establish by a preponderance of the

evidence that subject matter jurisdiction exists. *See Fitts v. Federal Nat'l Mortgage Ass'n*, 44 F.Supp.2d 317, 320 (D.D.C. 1999), *aff'd* 236 F.3d 1 (D.C.Cir. 2001). When a court lacks jurisdiction, it must dismiss the proceeding. Fed. R. Civ. P. 12(b)(1).

      Under Rule 56, summary judgment is required where no genuine dispute exists as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987). Once the moving party has met its burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.

      In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986); *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

**Privacy Act Remedy Cannot be Used to Collaterally Attack Computation of Plaintiff's Sentence**

Plaintiff is currently confined at the Federal Correctional Institution in Estill, South Carolina. Plaintiff's real challenge in this case is to the conclusion of the PSR that plaintiff engaged in distributing multiple kilograms of cocaine base (more than 1.5 K), resulting in the sentence imposed on him, and BOP's subsequent determination of his security classification, quarters assignment and ultimately the length of his sentence. Complaint at Appendix A. His challenge must be brought in a petition for a writ of habeas corpus under 28 U.S.C. §2241.

This Circuit has established that habeas is the exclusive means for a federal prisoner to challenge the fact or duration of custody. *See, e.g. Forrester v. U.S. Parole Com'n.,* 310 F.Supp.2d 162, 168 -170 (D.D.C.2004); *Bourke v. Hawk-Sawyer,* 269 F.3d 1072, 1074 (D.C.Cir.2001) (quoting *Razzoli v. Federal Bureau of Prisons,* 230 F.3d 371, 373 (D.C.Cir.2000)) ("habeas is indeed exclusive even when a non-habeas claim would have a merely probabilistic impact on the duration of custody."). In *Razzoli,* the Circuit Court held that a prisoner could not assert a claim under the Privacy Act because his only recourse was to seek relief through a habeas petition. *Razzoli,* 230 F.3d at 376. Similar to this case, the prisoner's Privacy Act claim in *Razzoli* alleged that the Bureau of Prisons and the Parole Commission had "violated 5 U.S.C. § 552a(e)(5) by maintaining in their files and using a false record, [a] report of [a] drug possession incident, even though they knew it to be false." *Id.* at 374. The plaintiff argued that the defendants had relied on this false information resulting in his loss of 60 days statutory good time credit and the withdrawal of his recommended parole release date, which was replaced by "a new date twenty-four months later, in effect delaying his eligibility for parole by two years." *Id.* at 373. The Circuit Court

"conclud[ed] that Razzoli's Privacy Act claim--not only in regard to the good time decision but also the parole eligibility determination--[was] not cognizable." *Id.* at 376. Rather, the plaintiff's sole recourse was to file a petition for habeas relief, even though his "non-habeas claim would have [had] a merely probabilistic impact on the duration of [his] custody." *Id.* at 373.

Plaintiff here contended in his request for an administrative remedy that "If these paragraphs were corrected the length of sentence would be reduced."   Additionally, the proof necessary to support Plaintiff's claim that the PSR is false or inaccurate, "involves the proof of a fact that would also be essential to a habeas corpus action." *Razzoli,* 230 F.3d at 376 *citing Clayton-El v. Fisher*, 96 F.3d 236, 242 (7th Cir.1996).   Therefore, habeas is Plaintiff's exclusive remedy.

**Venue for Plaintiff's Habeas Claim Is Improper in the District of Columbia**

Although a Privacy Act claim is properly venued in the District of Columbia, to the extent that Plaintiff actually is asserting a  habeas corpus claim, such a claim must be heard in the District in which he is incarcerated.  *See, e.g. Sellers v. Bureau of Prisons*,  1988 WL 105007, *1-2 (D.D.C 1998.)  *affirmed by* 1993 WL 301032 (D.C. Cir. 1993). ("[T]he Court notes that plaintiff's true grievance appears to be the effect the alleged inaccuracies have had on his parole date. This claim, which sounds in habeas corpus, *see, e.g., Preiser v. Rodriguez*, 411 U.S. 475 (1973), must be heard in the United States District Court for South Carolina, the only Court with personal jurisdiction over plaintiff's custodian. *Guerra v. Meese*, 786 F.2d 414 (D.C.Cir.1986).)

Plaintiff is not incarcerated in the District of Columbia, but in South Carolina.  Thus venue for his habeas complaint is improper in this Court.

Additionally, Plaintiff has not named the Warden as a defendant in this matter, has not

served the Warden, and the Court lacks personal jurisdiction over the Warden.

**The BOP is exempt from the record-amendment requirements of Section (d) of the Privacy Act.**

Subsection (d)(2) of the Act requires a federal agency to permit an individual who is the subject of the agency's records to request amendment of any record pertaining to him. 5 U.S.C. §552a(d)(2). In the case of an agency refusal to do so, the Act permits the individual to bring a civil action which may result in a court order to amend the disputed record. *See* 5 U.S.C. § 552a(g)(1)(A) & (C) and § 552a(g)(2)(A).

However, the Privacy Act also allows the head of certain law enforcement agencies to promulgate regulations exempting any of the agency's systems of records from specified provisions of the Act, including subsection (d)(2). *See* 5 U.S.C. § 552a(j)

Title 5 U.S.C. § 552a(e)(5) authorizes regulations to be issued exempting "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision" from specified provisions of the Act. 5 U.S.C. § 552a(j)(2). Pursuant to that authority, the Inmate Central Records System is exempt from subsections (d), (e)(5) and (g) of the Privacy Act. See 28 C.F.R. § 16.97(a)(4), (j).

Consequently, the injunctive relief Plaintiff demands, amendment of the PSI maintained in the BOP's Inmate Central Records System, is not available. *See White v. United States Probation Office*, 148 F.3d 1124, 1125 (D.C.Cir.1998) (barring claim for amendment of presentence report); *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C.Cir.1997) (per curiam) (denying injunctive relief on the ground that regulations exempt BOP records from amendment provision of Privacy Act); *Doe v.*

*FBI*, 936 F.2d 1346,1352 (D.C.Cir. 1991)(no cause of action exists when agency has exempted records from amendment requirements).  Consequently, Plaintiff has no claim under 5 U.S.C. 552a(g)(1)(A) and (B) for amendment of his BOP records.

Therefore, plaintiff's complaint fails to state a claim upon which relief could be granted, insofar as it concerns the BOP's refusal to change records contained in its files , i.e. the PSR, to conform with plaintiff's assertions concerning the PSR's alleged inaccuracy. Therefore, under Rule 12 (b)(6), the claim for relief under § 552a(g)(1)(A) must be dismissed.

**The BOP has complied with 5 U.S.C. §552a(e)(5) by providing a fair opportunity to plaintiff to present his contentions about the PSR in his file.**

 Section 552a(e)(5) of the Privacy Act requires that an agency maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.  The Privacy Act provides civil remedies at 5 U.S.C. §552a(g) for violations of §552a(e)(5) of the Act.  Section (g)(1)(C) provides that an individual may bring a civil action against an agency which "fails to maintain any record concerning an individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness . . . ." Section (g)(4) provides for civil remedies if the plaintiff can show that the agency willfully or intentionally failed to maintain a record which resulted in an adverse determination.

Defendants do not dispute that they have an obligation to undertake efforts to maintain accurate records.  The U.S. Court of Appeals for the District of Columbia held that under §552a(e)(5), "as long as the information contained in agency's files is capable of being verified, then. . . the agency must take reasonable steps to maintain the accuracy of the information to ensure

9

fairness to the individual." *Sellers v. Bureau of Prisons*, 959 F.2d 307, 312 (D.C. Cir. 1992).

The BOP has enacted internal procedures to facilitate the handling of prisoner's Privacy Act complaints. See Exhibit #7. The BOP policy requires authorities to undertake reasonable efforts to maintain the accuracy of recorded information. *See Sellers, 959 F.2d at 312.* Once an inmate provides evidence which supports a challenge, the BOP requires an investigation to correct any inaccuracies and to ensure that no determinations were made based on discredited information.

The BOP has implemented a reasonable procedure which ensures fairness, accuracy and efficiency in its determinations, and since the BOP complied with the procedure in Plaintiff' case, the BOP did not act in an intentional or willful manner. The BOP considered Plaintiff' contentions concerning the alleged inaccuracies in his file, but his allegations were contradicted by the government's evidence regarding the amount of drugs which could have reasonably been attributed to him. Plaintiff has failed to present any evidence that the BOP's actions were deficient or that the BOP acted with "something greater than gross negligence." *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C.Cir 1987). Accordingly, the court should find that the BOP did not willfully or intentionally ignore the fairness standard of section 552a(e)(5).

More importantly, if plaintiff had provided sufficient proof that the PSI contained inaccurate information, the Bureau of Prisons does not have the authority to amend a PSI. The PSI is not a BOP record. The United States Parole Commission has promulgated regulations exempting its system of inmate records from the Privacy Act's amendment provisions and has enacted a rule that exempts presentence reports from amendment or correction. *See* 28 C.F.R. § 16.85 and § 16.51(c). Program Statement 5800.11 reflects the fact that a PSI cannot be amended.

10

*See* Exhibit 7, P.S. 5800.11 at p. 19-20. ("USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigative Reports after sentencing since it is a court document").  Had Plaintiff's PSI contained inaccurate information, the Bureau of Prisons would not have the authority to amend the document;  it could only note the inmate's challenge in its file.

The act of noting an inmate's challenge to information has been held to satisfy the Privacy Act's obligations.  In fact, the presence of an inmate's rebuttal letter in the inmate's file alone can satisfy the Bureau's obligations under the Privacy Act.  *Graham v. Hawk*, 857 F. Supp. 38 (W.D. Tenn. 1994), *affirmed*, 59 F.3d 170 (6th Cir. 1995); *See also Fendler v. U.S. Bureau of Prisons*, 846 F.2d 550 (9th Cir. 1987)(including inmate's rebuttal with reports the Bureau sent to Parole Commission met the agency's duty under Privacy Act).

**Statute of Limitations**

Plaintiff filed the instant complaint on September 29, 2006.  *See* Complaint.  Pursuant to the Privacy Act: "An action to enforce any liability created under this section may be brought . . . within two years from the date on which the cause of action arises . . . ."  5 U.S.C. § 552a(g)(5). The District of Columbia Circuit has determined this provision to mean that "in a normal Privacy Act claim, the cause of action does not arise and the statute of limitations does not begin to run until the plaintiff knows or should know of the alleged violation.  *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C.Cir. 1987).  Further,  "[a] new cause of action does not arise each and every time there is subsequent adverse determination based on the allegedly incorrect records."  *Szymanksi v. U.S. Parole Com'n*, 870 F.Supp. 377, 378 n.4 (D.D.C. 1994) (citing *Diliberti v. United States*, 817 F.2d 1259, 1264 (7th Cir. 1987)).  Failure to file suit within the applicable statute of limitations

11

deprives the Court of subject matter jurisdiction over such claims.  *Szymanski* 807 F. Supp. at 378.

Plaintiff has known of the alleged inaccurate information in his PSI since the time of his

sentencing in June 1996.  His attorney objected to the same information which Plaintiff has

attempted to resurrect, and the sentencing Court adopted the PSR as written.  See Smith Dec. at ¶

11;  April 26, 2006 letter from the probation office at Complaint at Appendix C.

Therefore, any privacy act claim expired well before this complaint was filed.

## CONCLUSION

Therefore, for the reasons set forth above, plaintiff's complaint should be dismissed  on all

claims, or in the alternative summary judgment should be granted in the favor of the defendants.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, D.C. Bar# 498610
United States Attorney

_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____

RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

<u>CERTIFICATE OF SERVICE</u>

I  HEREBY  CERTIFY that on this <u>19 </u>day of <u>January</u>, 2007, a true and correct copy of the foregoing Motion to Dismiss or in the alternative for summary judgment was served  by first class United States mail, postage prepaid marked for delivery to:

Marlin Davis

Reg. No. 30704-004

Federal Correctional Institution-Estill

100 Prison Road

Estill, SC 29918

_____

RHONDA C. FIELDS

United States Attorney's Office

Judiciary Center Building

555 4th Street, N.W. - Room E4804
Washington, D.C. 20530

(202) 514-6970

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARLIN DAVIS, #30704-004          )
                                  )
                  Plaintiff,      )
                                  )
v.                                )          Case No.  1:06CV01698
                                  )
                                  )
FEDERAL BUREAU OF PRISONS;        )
UNITED STATES PROBATION OFFICE    )
                                  )
                                  )
                  Defendant(s)    )
                                  )

---

## DECLARATION OF BRUCE SMITH

---

I, Bruce Smith, do hereby declare and state the following:

1.   I am currently employed as a Correctional Treatment Specialist (a.k.a. Case Manager) at the Federal Correctional Institution (FCI) Estill, South Carolina.  Included in my official duties is the responsibility of managing and monitoring all program activities and release planning for inmate's assigned to my caseload.

2.   The Plaintiff, Marlin Davis, Register Number 30704-004, is assigned to my caseload, thus, I am thoroughly familiar with Mr. Davis and the allegations he has raised in the above captioned complaint.

3.   Mr. Davis was sentenced on June 3, 1996, to a 360 month term of imprisonment by the United States District Court for the Northern District of Florida, for Conspiracy to

Page 1 of 4

Distribute and to Possess with Intent to Distribute Cocaine, Cocaine Base, and Marijuana (21 U.S.C. § 846). He is currently incarcerated at the Federal Correctional Institution (FCI) Estill, South Carolina, and has a projected release date of November 17, 2021, via Good Conduct Time (GCT) Release.

4.     After a Defendant is sentenced by a federal court to a federal term imprisonment, the Federal Bureau of Prisons (BOP) is tasked with insuring each inmate is placed in a facility commensurate with their security and program needs. This task is accomplished through the use of a consistent system of classification which allows staff to exercise their professional judgement by systematically and objectively reviewing the inmate's classification so he or she is placed in an environment which is safe for both the inmate and staff while protecting the public from undue risk.

5.     The BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification, provides instructions for designating inmates to institutions according to security level, and for assigning custody classifications. There are several factors involved in determining an inmate's security and custody classification. As I understand it, the issue raised by Mr. Davis in his complaint revolves specifically around the category of "Severity of Offense."

6.     Pursuant to Program Statement 5100.08, to determine the severity of the current offense, staff are to enter the appropriate number of points that reflect the most severe documented instant offense behavior regardless of the conviction offense, and severity is determined by using the Offense Severity Scale (Appendix A). Mr. Davis was convicted of a drug

Page 2 of 4

offense, thus, when determining the severity of drug offenses the total amount of drugs attributed to the inmate is also considered.

7.    According to Mr. Davis' PSI he had been attributed with 1.5 kilograms or more of cocaine base. Thus, the most appropriate severity was that of a "Moderate Severity" which is the offense of Cocaine greater than or equal to 400 grams, .4 kilograms, or .88 pounds. The moderate severity category requires a score of 3 points, which is reflected on Mr. Davis' Male Custody Classification Form.

8.    Mr. Davis has alleged the information in his Presentence Investigation Report (PSI) concerning the amount of drugs attributed to him is incorrect. He has maintained that the information in his PSI conflicts with the actual testimony of witnesses during his trial. On or about February 13, 2006, Mr. Davis commenced the formal inmate grievance process requesting the BOP to take whatever measures were necessary to correct the information in his PSI.

9.    The BOP has procedures detailing the steps to be taken when an inmate alleges there is inaccurate information in his Central File set forth in Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files. When an inmate challenges information contained within the PSI, BOP staff are instructed to contact the appropriate United States Probation Office (USPO) about the challenged information and request that a written response be provided.

10.    On April 12, 2006, I contacted the USPO in the Northern District of Florida, in writing, and informed them of Mr. Davis' allegations. On April 26, 2006, the USPO responded, in writing, and indicated that prior to sentencing Mr. Davis' attorney had filed objections

relating to the specific paragraphs in the PSI that Mr. Davis was now challenging. The USPO also indicated the sentencing judge had adopted the PSI as written as it related to the paragraphs in question. The USPO further indicated that absent an order from the sentencing court, they had no authority to amend the PSI.

11.    Because the information provided to me by the USPO did not support the allegations being made by Mr. Davis regarding the amount of drugs attributed to him, the "Moderate Severity" classification has not been altered. However, all of the information provided by Mr. Davis and the USPO regarding Mr. Davis' challenge to the information contained within his PSI will be retained in his Central File.


I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing information is true and correct to the best of my information, knowledge and belief.


Executed this  _15_  day of November 2006, at Estill, South Carolina.


Bruce Smith
Correctional Treatment Specialist

# DEFENDANT'S EXHIBIT

# #1

AO 245B (Rev. 3/95) Sheet 1 - Judgment in a Criminal Case

# United States District Court
## Northern District of Florida

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | (For Offenses Committed On or After November 1, 1987) |
| **Marlin Davis** | Case Number:  4:92CR04013-019 |
| (True Name: Boliver Darlton Oliver) | Steve P. Glazer, Crawfordville, FI̶  RE̶ ̶ ̶D |
| | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☒ was found guilty on count(s)  1 (March 8, 1996)
   after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C.  § 846 | Conspiracy to Distribute and to Possess With Intent to Distribute Cocaine, Cocaine Base, & Marijuana | 04/01/1992 | 1 |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

   IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.:  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 | 06/03/1996 |
| Defendant's Date of Birth:  05/14/1971 | Date of Imposition of Judgment |
| Defendant's USM No.:  30704-004 | |
| Defendant's Residence Address: | |
| 8260 SW 22nd Street | *William Stafford* (signature) |
| | Signature of Judicial Officer |

| | | |
|---|---|---|
| North Lauderdale | FL | 33068 |

William Stafford
Senior U. S. District Judge
Name & Title of Judicial Officer

Defendant's Mailing Address:
8260 SW 22nd Stree̶

North Lauderdale      33068

CERTIFIED A TRUE COPY
ROBERT A. MOSSING, CLERK
By: _____ Deputy Clerk

Date  *June 12, 1996*

96 JUN 12 F
FILE

AO 245B (Rev. 3/95) Sheet 2 - Imprisonment

DEFENDANT:        Marlin Davis
CASE NUMBER:      4:92CR04013-019

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of    **360    month(s)** .

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ a.m./p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Mar

AO 245B (Rev. 3/95) Sheet 3 - Supervised Release

Judgment-Page __3__ of __6__

DEFENDANT:      Marlin Davis
CASE NUMBER:    4:92CR04013-019

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of        5      year(s)    .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

For offenses committed on or after September 13, 1994:

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

See Special Conditions of Supervision - Sheet 3.01

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 3/95) Sheet 3 - Supervised Release

DEFENDANT:      Marlin Davis
CASE NUMBER:    4:92CR04013-019

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall submit to testing to determine whether or not he is using drugs or alcohol.

The defendant shall provide any financial information requested by the probation officer.

The defendant shall notify the probation officer at least 10 days prior to any change in his residence.

AO 245B (Rev. 3/95) Sheet 5, Part A - Criminal Monetary Penalties

Judgment-Page __4__ of __6__

DEFENDANT:      Marlin Davis
CASE NUMBER:    4:92CR04013-019

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| Totals: | $    50.00 | $ | $ |

☐ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . .    $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ The interest requirement is waived.

☐ The interest requirement is modified as follows:

## RESTITUTION

☐ The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____ . An Amended Judgment in a Criminal Case will be entered after such determination.

☐ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| Totals: | $ _____ | $ _____ | |

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994.

Judgment-Page __5__ of __6__

DEFENDANT:      Marlin Davis

CASE NUMBER:    4:92CR04013-019

### SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  ☒  in full immediately; or

B  ☐  $ _____ immediately, balance due (in accordance with C, D, or E); or

C  ☐  not later than _____; or

D  ☐  in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  ☐  in _____ (e.g. equal, weekly, monthly, quarterly) installments of $ _____ .
        over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The National Fine Center will credit the defendant for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States Courts National Fine Center, Administrative Office of the United States Courts, Washington, DC  20544, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program. If the National Fine Center is not operating in this district, all criminal monetary penalty payments are to be made as directed by the court, the probation officer, or the United States attorney.

DEFENDANT:        **Marlin Davis**

CASE NUMBER:      4:92CR04013-019

# STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

## OR

☒ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):


See Additional Factual Findings and Guideline Application Exceptions - Sheet  6.01

**Guideline Range Determined by the Court:**

Total Offense Level:  ____42____

Criminal History Category:  ____II____

Imprisonment Range:  ____360____ to _____ months

Supervised Release Range:  _____ to ____5____ years

Fine Range:  $ ____25,000.00____ to $ ____4,000,000.00____

☒ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution:  $ _____

☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐ For offenses that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐ Partial restitution is ordered for the following reason(s):


☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☒ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

This sentence is imposed in view of the defendant's participation in this offense and his prior record.


## OR

☐ The sentence departs from the guideline range:

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following specific reason(s):

AO 245B (Rev. 3/95) Sheet 6 - Statement of Reasons

DEFENDANT:        Marlin Davis
CASE NUMBER:      4:92CR04013-019

## ADDITIONAL FACTUAL FINDINGS AND GUIDELINE APPLICATION EXCEPTIONS

The Court finds that the three-level increase in paragraphs 82 and 83 is not warranted, but that a two-level increase for role in the offense is appropriate. This results in a total offense level of 42 and sentencing guideline range of 360 months to Life.

# DEFENDANT'S EXHIBIT

## #2

```
  EDGBV  540*23 *              SENTENCE MONITORING          *    11-09-2006
PAGE 001          *            COMPUTATION DATA             *    09:45:50
                               AS OF 11-09-2006

REGNO..: 30704-004 NAME: DAVIS, MARLIN


FBI NO...........: 879058PA0           DATE OF BIRTH: 05-14-1971
ARS1.............: EST/A-DES
UNIT.............: UNT B                QUARTERS.....: B04-412L
DETAINERS........: YES                  NOTIFICATIONS: NO

PRE-RELEASE PREPARATION DATE: 05-17-2021

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  11-17-2021 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: FLORIDA, NORTHERN DISTRICT
DOCKET NUMBER...................: 4:92CR04013-019
JUDGE...........................: STAFFORD
DATE SENTENCED/PROBATION IMPOSED: 06-03-1996
DATE COMMITTED..................: 07-17-1996
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                FELONY ASSESS  MISDMNR ASSESS  FINES          COSTS
NON-COMMITTED.: $50.00         $00.00          $00.00         $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  391
OFF/CHG: 21:USC 846 CONSPIRACY TO DIST/POSS W/I/T/D COCAINE, COCAINE
         BASE, & MARIJUANA

 SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  360 MONTHS
 TERM OF SUPERVISION............:    5 YEARS
 CLASS OF OFFENSE...............: CLASS A FELONY
 DATE OF OFFENSE................: 04-01-1992




 G0002      MORE PAGES TO FOLLOW . . .
```

```
  EDGBV  540*23 *            SENTENCE MONITORING        *    11-09-2006
PAGE 002        *           COMPUTATION DATA           *    09:45:50
                             AS OF 11-09-2006
```

REGNO..: 30704-004 NAME: DAVIS, MARLIN


------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 11-21-2003 AT JES AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 06-03-1996
TOTAL TERM IN EFFECT............:   360 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    30 YEARS
EARLIEST DATE OF OFFENSE........: 04-01-1992

JAIL CREDIT.....................:   FROM DATE      THRU DATE
                                    09-04-1992     09-08-1992
                                    09-09-1992     09-09-1992
                                    06-24-1994     06-24-1994
                                    09-13-1995     06-02-1996

TOTAL PRIOR CREDIT TIME.........: 271
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 1387
TOTAL GCT EARNED................: 567
STATUTORY RELEASE DATE PROJECTED: 11-17-2021
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 09-04-2025


PROJECTED SATISFACTION DATE.....: 11-17-2021
PROJECTED SATISFACTION METHOD...: GCT REL
```


G0002       MORE PAGES TO FOLLOW . . .

# DEFENDANT'S EXHIBIT

# #3

P5100.08
9/12/2006
Chapter 4, Page 7

## 7. SEVERITY OF CURRENT OFFENSE

| 7. SEVERITY OF CURRENT OFFENSE | **0** = LOWEST<br>**1** = LOW MODERATE | **3** = MODERATE<br>**5** = HIGH | **7** = GREATEST | |
|---|---|---|---|---|

Enter the appropriate number of points that reflect the most severe documented instant offense behavior regardless of the conviction offense.  For multiple offenses, the highest score will be used in scoring the current offense.  Staff will consider the offense behavior on all sentences, including federal sentences that have a future beginning date or a previous D.C. or state sentence if there was no physical release from custody.

**NOTE:**      This will require DSCC staff to make reasonable efforts to obtain documentation.

Severity is determined by using the Offense Severity Scale (Appendix A).

**Example:**  According to the PSR, the individual was involved in an Assault With Serious Injury (Greatest severity level) but pled guilty to a Simple Assault (Moderate severity level).  Assign the points on the basis of the more severe documented behavior, i.e., assign 7 points (Greatest severity level).

**In determining "Severity of Current Offense" staff must review the Statement of Reasons (SOR) and ensure the information provided is appropriately used in classifying the inmate.**

**Example:**  According to the PSR the individual was involved in a drug conspiracy responsible for distribution of 31 grams of Cocaine Base "Crack", but was individually only responsible for 2 grams, he/she would be scored as Moderate Severity for this item. However, the SOR, indicates the Sentencing Judge found the individual responsible for less than 1 gram; therefore, the appropriate scoring should be Low Moderate severity.

- **PROCEDURES FOR PAROLE, MANDATORY RELEASE, SPECIAL PAROLE TERM, OR SUPERVISED RELEASE VIOLATORS**

If the violation was the result of new criminal conduct, regardless of conviction status, use the new criminal conduct for scoring "Severity of Current Offense" (see Appendix A).  If the violation behavior was a technical violation, score the "Severity of Current Offense" as Low Moderate.

P5100.08
9/12/2006
Appendix A, Page 1

```
┌─────────────────────────────┐
│   OFFENSE SEVERITY SCALE     │
└─────────────────────────────┘
```

| GREATEST SEVERITY |
|---|

**Aircraft Piracy** - placing plane or passengers in danger
**Arson** - substantial risk of death or bodily injury
**Assault** - serious bodily injury intended or permanent or
    life threatening bodily injury resulting)
**Car Jacking** - any
**Drug Offense** - see criteria below*
**Escape** - closed institution, secure custody, force or
    weapons used
**Espionage** - treason, sabotage, or related offenses
**Explosives** - risk of death or bodily injury
**Extortion** - weapon or threat of violence
**Homicide or Voluntary Manslaughter** - any
**Kidnaping** - abduction, unlawful restraint, demanding or
    receiving ransom money
**Robbery** - any
**Sexual offenses** - rape, sodomy, incest, carnal knowledge,
    transportation with coercion or force for commercial
    purposes
**Toxic Substances/Chemicals:** - weapon to endanger human life
**Weapons** - distribution of automatic weapons, exporting
    sophisticated weaponry, brandishing or threatening use of
    a weapon

* Any **drug offender** whose current offense includes the following
criteria will be scored in the Greatest severity category:

The offender was part of an organizational network and he or she
organized or maintained ownership interest/profits from **large-scale** drug
activity,

***AND***

The drug amount equals or exceeds the amount below:

**Cocaine** - greater than or equal to 10,000 gm, 10 K, or 22 lb
**Cocaine Base "Crack"** - greater than or equal to 31 gm
**Hashish** - greater than or equal to 250,000 gm, 250 K, or 551 lb
**Marijuana** - greater than or equal to 620,000 gm, 620 K, or 1,367 lb
**PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage units
**Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
**Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lbs
**Other illicit drugs:** - Amphetamine, Barbiturates, LSD, etc. greater than
or equal to 250,000 dosage units

P5100.08
9/12/2006
Appendix A, Page 2

| HIGH SEVERITY |
|---|

**Arson** - other
**Cruelty to Children** - any
**Drugs (For Females only)**
    **Cocaine** - greater than or equal to 10,000 gm, 10 K, Or 22 lb
    **Cocaine Base "Crack"** - greater than or equal to 31 gm
    **Hashish** - greater than or equal to 250,000 gm, 250 K, Or 551 lb
    **Marijuana** - greater than or equal to 620,000 gm, 620 K, Or 1,367 lb
    **PCP** - greater than or equal to 100,000 mg, 100 gm, or 20,000 dosage units
    **Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb
    **Methamphetamine** - greater than or equal to 16,000 gm, 17 K, or 35 lb
    **Other illicit drugs** - Amphetamine, Barbiturates, LSD etc. - greater than or equal to 250,000 dosage units
**Explosives** - other
**Extortion** - other
**Involuntary manslaughter** - includes vehicular homicide
**Residential Burglary** - with evidence that occupants were in dwelling during the commission of the offense
**Rioting** - any
**Sexual Offenses** - sexual exploitation of children, unlawful sexual conduct with a minor, pornography
**Stalking** - any
**Threatening Communications** - with conduct evidencing intent to carry out such threat
**Toxic Substances/Chemicals** - other

P5100.08
9/12/2006
Appendix A, Page 3

```
┌─────────────────────────────────────────────────────────────────────────┐
│                          MODERATE SEVERITY                                │
├─────────────────────────────────────────────────────────────────────────┤
```

**Assault** - other

**Auto Theft** - any

**Breaking and Entering** - any

**Burglary** - other

**Child Abandonment** - any

**Contempt of Court** - criminal contempt

**Drugs Cocaine** - greater than or equal to 400 gm, .4 K, or .88 lb

    **Cocaine Base "Crack"** - greater than or equal to 1 gm

    **Hashish** - greater than or equal to 11,000 gm, 11 K, or 24 lb

    **Marijuana** - greater than or equal to 25,000 gm, 25 K, or 55 lb

    **PCP** - greater than or equal to 4,000 mg, 4 gm, or .14 oz

    **Heroin or Opiates** - greater than or equal to 80 gm, .08 K, or .18 lb

    **Methamphetamine** - greater than or equal to 667 gm, .67 K, or 1.47 lb

    **Other illicit drugs** - Amphetamine, Barbiturates, LSD, etc. greater
than or equal to 10,000 dosage units, .05 K, or .11 lb

**Escape** - walkaway from open institution, failure to appear/bail reform act,
no threat of violence involved

**Immigration Offenses** - transportation of unlawful aliens

**Obstruction of Justice** - any

**Property Offenses** - over $250,000, includes theft, fraud, tax evasion,
forgery, currency offenses

**Sexual Offenses** - other

**Weapons** - other

```
┌─────────────────────────────────────────────────────────────────────────┐
│                        LOW-MODERATE SEVERITY                              │
├─────────────────────────────────────────────────────────────────────────┤
```

**Bigamy** - Polygamy

**Drugs Cocaine** - less than 400 gm, .4 K, or .88 lb

    **Cocaine Base "Crack"** - less than 1 gm

    **Hashish** - less than 11,000 gm, 11 K, or 24 lb

    **Marijuana** - less than 25,000 gm, 25 K, or 55 lb

    **PCP** - less than 4,000 mg, 4 gm, or .14 oz

    **Heroin or Opiates** - less than 80 gm, .08 K, or .18 lb

    **Methamphetamine** - less than 667 gm, .67 K, or 1.47 lb

    **Other illicit drugs** - Amphetamine, Barbiturates, LSD,
etc., less than 10,000 dosage units, .05 K, or .11 lb

**Indecent Exposure** - indecent acts, lewd behavior

**Immigration Offenses** - other

**Post-Release Supervision Violation** - technical, administrative

**Property Offenses** - valued between $2,000 and $250,000)

P5100.08
9/12/2006
Appendix A, Page 4

| LOWEST SEVERITY |
|---|
| **Drugs** - personal use<br>**Gambling Law Violation** - any<br>**Liquor Law Violation** - any<br>**Property Offenses** - less than $2,000<br>**Suspicion** - any<br>**Traffic Laws** - any<br>**Vagrancy** - any<br>**Vandalism** - any |

| MARIJUANA EQUIVALENT CHART | |
|---|---|
| DRUG | MARIJUANA EQUIVALENT |
| 1 gm of Heroin | 1000 gm |
| 1 gm of Cocaine Powder | 200 gm |
| 1 gm of Methamphetamine | 2000 gm |
| 1 gm of LSD | 100,000 gm |
| 1 gm of "crack" cocaine | 20,000 gm |
| 1 gm of Hashish Oil | 50 gm |
| For other drug equivalents, please refer to the U.S. Sentencing Commission Guidelines Manual. | |

| MEASUREMENT CONVERSION TABLE | |
|---|---|
| 1 oz = 28.35 gm<br>1 lb = 453.6 gm<br>1 lb = 0.4536 kg<br>1 gal = 3.785 liters<br>1 qt = 0.946 liters | 1 gm = 1 ml (liquid)<br>1 liter = 1,000 ml<br>1 kg = 1,000 gm<br>1 gm = 1,000 mg<br>1 grain = 64.8 mg |

P5100.08
9/12/2006
Appendix A, Page 5

---

**DEFINITION OF ROLES INVOLVED IN DRUG OFFENSES**

---

To determine whether an individual involved with a drug offense rose to the level of an organizer or leader, read the "Offense Conduct" section of the Presentence Investigation Report, and any other available information (i.e., Statement of Reasons, U.S. Attorney Report, etc.) to determine what the individual's role was in the criminal activity.  The role definitions below are grouped into two categories:  Those that rise to the level of organizer/leader; and, those that do not.

---

**ORGANIZER/LEADER**

---

**Importer/High-Level Supplier**: imports or otherwise supplies large quantities of drugs; is at or near the top of the distribution chain; has ownership interest in drugs (not merely transporting drugs for another individual); usually supplies drugs to other drug distributors and does not deal in retail amounts; may employ no or very few subordinates.

**Organizer/Leader**: organizes, leads, directs, or otherwise runs a drug distribution organization.  Receives the largest share of the profits and has the greatest decision-making authority.

**Grower/Manufacturer**: grows, cultivates, or manufactures a controlled substance, and is the principal owner of the drugs. (Keep in mind, the intent of this definition is to capture the individual who has the capability to manufacture enormous amounts of drugs in his garage/lab for example, and not the individual who is growing only five marijuana plants in his basement.)

**Financier/Money Launderer**: provides money for purchase, importation, manufacture, cultivation, transportation, or distribution of drugs; launders proceeds of drug sales or purchases.

**Aircraft Pilot/Vessel Captain**: pilots vessel or aircraft; requires special skill; does not include inmate who is the only participant directing a small boat (i.e., a speed boat) onto which drugs had been loaded from a "mother ship" (such person is a courier).

P5100.08
9/12/2006
Appendix A, Page 6

## NOT A DRUG ORGANIZER/LEADER

**Manager:** serves as a lieutenant to assist one of the above; manages all or a significant portion of the manufacturing, importation, or distribution operation; takes instructions from one of the above and conveys to subordinates; directly supervises at least one other co-participant in an organization of at least five co-participants.

**Bodyguard/Strongman/Debt Collector:** provides physical and personal security for another co-participant in the offense; collects debts owed, or punishes recalcitrant persons.

**Chemists/Cooks/Chemical Supplier:** produces LSD, methamphetamine, crack cocaine, or other illegal drugs, but does not qualify as a Grower/Manufacturer because he/she is not the principal owner of the drugs. Chemical supplier does not handle drugs themselves but engages in the unlawful diversion, sale, or furnishing of listed chemicals or equipment used in the synthesis or manufacturing of controlled substances.

**Supervisor:** supervises at least one other co-participant, however, has limited authority and does not qualify as a Manager.

**Street-Level Dealer:** distributes retail quantities directly to the user.

**Broker/Steerer/Go-Between:** arranges for two parties to buy/sell drugs, or directs potential buyer to a potential seller.

**Courier:** transports or carries drugs with the assistance of a vehicle or other equipment. Includes situations where individual, who is otherwise considered to be a crew member, is the only participant directing a vessel (e.g., a speed boat) onto which drugs had been loaded from a "mother ship".

**Mule:** transports or carries drugs internally or on their person, often by airplane, or by walking across a border. Also includes an individual who only transports or carries drugs in baggage, souvenirs, clothing, or otherwise.

**Renter/Storer:** provides (for profit/compensation) own residence, structures (barns, storage bins, buildings), land, or equipment for use to further the offense. This inmate is distinguished from the enabler because he/she is paid (in some way) for his/her services.

P5100.08
9/12/2006
Appendix A, Page 7

**Money runner**: transports/carries money and/or drugs to and from the street-level dealer.

**Off-loader/Loader**: performs the physical labor required to put large quantities of drugs into storage, hiding, or onto some mode of transportation.

**Gopher/Lookout/Deckhand/Worker/Employee**: performs very limited, low-level function in the offense (whether or not ongoing); includes running errands, answering the telephone, receiving packages, packaging the drugs, manual labor, acting as lookout to provide early warnings during meetings, exchanges, or off-loading, or acting as deckhand/crew member on vessel or aircraft used to transport large quantities of drugs.

**Enabler** (Passive): plays no more than a passive role in the offense, knowingly permitting a certain unlawful criminal activity to take place without actually being involved with the activity; may be coerced or unduly influenced to play such a function (e.g., a parent or grandparent threatened with displacement from a home unless they permit the activity to take place), or may do so as "a favor" (without compensation).

**User Only**: possessed small amount of drugs apparently for personal use only; no apparent function in any conspiratorial criminal activity.

**Wholesaler**: sells more than retail/user-level quantities (greater than one ounce) in a single transaction.

P5100.08
9/12/2006
Appendix A, Page 8

## SPECIAL INSTRUCTIONS

In the case of an offense involving marijuana plants, one plant equals 100 grams (or the actual weight of the useable marijuana, whichever is greater).

If the offense includes several types of drugs, compute the marijuana equivalent and total the sum to arrive at a grand total.  For example, if the inmate has marijuana, cocaine, and heroin, compute the cocaine and heroin to an equivalent amount of marijuana and hold the inmate accountable for the sum total of the equivalent amount of marijuana.

Offenses not listed will be assigned a severity category according to the most comparable listed offense.

Score any attempt, aiding and abetting, conspiracy, misprision of a felony, and accessory after the fact in the same severity category as the underlying offense.  Total offense behavior is to be considered, utilizing the most serious offense or act committed.  However, in drug conspiracy cases, the individual will be held accountable as documented by the Judge in the Statement of Reasons.  If the Statement of Reasons is not attached, the Case Manager will review the Presentence Investigation Report to determine the individual's specific reported behavior, and not hold the individual accountable for the entire drug conspiracy empire.

If committed as a parole, mandatory release, special parole term, or supervised release violator as a result of a new conviction, use that new offense behavior for scoring "Severity of Current Offense."

If committed as a probation violator, use the most severe documented behavior between the original offense that prompted probation and the new criminal conduct (violation behavior) for scoring "Severity of Current Offense."

For this Program Statement's purposes, sentences with a specific finding of "withheld adjudication" will be considered the same as if the Judge made a finding of guilt.

# DEFENDANT'S EXHIBIT

# #6

Case 1:06-cv-01698-CKK     Document 14-6     Filed 01/19/2007     Page 2 of 2

```
  ESTPD  606.00 *      MALE CUSTODY CLASSIFICATION FORM          11-07-2006
PAGE 001 OF 001                                                  08:42:46
                          (A) IDENTIFYING DATA
REG NO..: 30704-004          FORM DATE: 06-02-2006          ORG: EST
NAME...: DAVIS, MARLIN                                      CR HX PT: 2
                             MGTV: POP MGT
PUB SFTY: SENT LGTH          MVED: 06-10-2007
                          (B) BASE SCORING
DETAINER: (0) NONE           SEVERITY.......: (3) MODERATE
MOS REL.: 185                PRIOR..........: (1) MINOR
ESCAPES.: (0) NONE           VIOLENCE.......: (5) < 5 YRS MINOR
PRECOMMT: (0) N/A
                          (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%     DRUG/ALC ABUSE.: (3) > 5 YRS
MENTAL STABILITY: (4) FAVORABLE  TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE       RESPONSIBILITY.: (4) GOOD
FAMILY/COMMUN...: (4) GOOD

                  --- LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE  SEC TOTAL   SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
 +9  +27    -3        +6          LOW         N/A            IN     DECREASE


G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

# DEFENDANT'S EXHIBIT

# #7



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5800.11
**DATE:** September 8, 1997
**SUBJECT:** Inmate Central File, Privacy Folder, and Parole Mini-Files

1. <u>PURPOSE AND SCOPE</u>.  The Bureau of Prisons maintains complete information on all inmates confined in Bureau institutions. Staff use the Inmate Central File, Privacy Folder, and Parole Mini-file to maintain pertinent information regarding a detainee, unsentenced and sentenced offenders.

The Bureau of Prisons has had numerous policy sources on all facets of the Inmate Central File System.  This Program Statement consolidates many of these sources for easier reference.  This issuance sets forth guidelines in the following areas:

    a.  Inmate Record Functions,
    b.  Inmate Central Files,
    c.  Standardization of Inmate Central File Material,
    d.  Maintenance, Security, and Access Responsibilities and Procedures,
    e.  Routine Uses of Inmate Central File,
    f.  Disclosure of Inmate Central File Materials,
    g.  Inmate Review of Inmate Central File,
    h.  Documentation of Oral Disclosure,
    i.  Transfer of Records Between Bureau Facilities,
    j.  Requests for Forwarding of Inmate Files,
    k.  Retirement of Inmate Central File, and
    l.  Parole Mini-files.
    m.  Pretrial Inmate File Material/Immigration & Naturalization Service (INS) Detainees

2. <u>PROGRAM OBJECTIVES</u>.  The expected results of this program are:

    a.  Inmate files will be maintained with complete information on each inmate confined in a Bureau of Prisons institution.

    b.  U.S. Parole Mini-Files will be completed and accessible to the U.S. Parole Commission for all inmates specified in this Program Statement.

3.  <u>DIRECTIVES AFFECTED</u>

   a.  <u>Directive Rescinded</u>

      PS 5800.09    Inmate Central File, Privacy Folder and
                        Parole Commission Files (7/21/93)

   b.  <u>Directives Referenced</u>

      PS 1330.13    Administrative Remedy Program (12/22/95)
      PS 1351.04    Release of Information (12/5/96)
      PS 5100.06    Security Designation and Custody
                        Classification Manual (6/7/96)
      PS 5180.04    Central Inmate Monitoring System (8/16/96)
      PS 5310.12    Psychology Services Manual (8/30/93)
      PS 5321.06    Unit Management (7/31/96)
      PS 5800.07    Inmate Systems Management Manual (12/24/91)
      PS 7331.03    Pretrial Inmates (11/22/94)

      TRM 5802.01   SENTRY General Use Technical Reference Manual
                        (06/01/94)

      Federal Register, Volume 41, Number 181 (9/16/76)

4.  <u>STANDARDS REFERENCED</u>

   a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  3-4092, 3-4093, 3-4095,3-4096,
3-4233, 3-4234.

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-1E-05, 3-ALDF-1E-01,
3-ALDF-1E-02, 3-ALDF-1E-04, 3-ALDF-1E-05, 3-ALDF-1E-06, 3-ALDF-
IF-08, 3-ALDF-3C-19, 3-ALDF-3C-20.

   c.  American Correctional Association 2nd Edition Standards for
Administration of Correctional Agencies:  2-CO-1E-01, 2-CO-1E-02,
2-CO-1E-03, 2-CO-1E-04, 2-CO-1E-06, 2-CO-1E-07, 2-CO-1E-08,
2-CO-1E-09.

   d.  American Correctional Association Standards for Adult
Correctional Boot Camp Programs:  1-ABC-1E-04, 1-ABC-1E-05, 1-
ABC-1E-06, 1-ABC-1E-07, 1-ABC-1E-08, 1-ABC-3C-13.

5.  <u>PRETRIAL PROCEDURES</u>.  File materials for pretrial inmates
shall be kept in letter size, straight cut, drop file folders.
The location of the folders shall be identified in the local
Institution Supplement at the Warden's discretion.  Depending on
where the pretrial file is maintained will determine the
appropriate accountability procedures.  For example, if the file
is maintained in Inmate Systems Management (ISM), ISM will
account for the file folders according to the ISM Department

accountability procedures; likewise, if the file is maintained in
the unit, the unit will account for the file folders according to
unit accountability procedures.  In either situation,
accountability procedures shall be established and outlined in
the Institution Supplement.

Staff shall adhere to the general requirements concerning the
handling of inmate files addressed in this Program Statement.
Pretrial file material shall include any documentation normally
retained for a sentenced inmate.  FOI Exempt material shall be
placed in the drop file folders appropriately stamped "FOI
Exempt."

6.  <u>DETAINEES (INS)</u>.  Institution staff shall maintain the Inmate
Central File on an inmate who completes his/her sentence and is
reclassified as an INS detainee.  The existing Inmate Central
File shall incorporate any documents accumulated during his/her
status as an INS detainee.  The existing Inmate Central File
shall be maintained active until the inmate is removed from the
institution by INS officials.

For inmates who are initially classified as INS detainees and
therefore have had no previous Inmate Central File created,
institution staff shall adhere to Section 5 (Pretrial Procedures)
of this Program Statement on specific instructions on file
materials for INS detainees.  The Institution Supplement shall
address the location of the files and establish file
accountability procedures.

6.  <u>WITNESS SECURITY FILES</u>.  Because of the sensitivity of
Witness Security Cases, procedures for handling these files may
differ.  For specific instructions refer to the Central Inmate
Monitoring Manual and/or the Protective Custody Unit Manual.

7.  <u>INMATE RECORD FUNCTIONS</u>.  Many inmate administrative and
clerical functions are appropriately performed in the unit while
others are appropriately performed in the ISM Department.
Normally, the functions of Central Files, Privacy Folder, and
mini-files created for use by the U.S. Parole Commission are
separated by Unit Staff/ISM Staff responsibilities in the
following manner.

   a.  <u>Unit Functions</u>

      • Create Inmate Central Files,
      • Create Privacy Folder,
      • Maintain Inmate Central File,
      • Monitor the filing/security of Inmate Central File, and
      • Create Parole Mini-files.

PS 5800.11
September 8, 1997
Page 4

b.   Inmate Systems Management Functions

- Coordinate movement of Central Files/Central File material to units,
- Interagency transfer of files, and
- Retirement and retrieval of inactive files.

c.   Regional Inmate System Functions

- Create and maintain State concurrence Central Files.

d.   Community Corrections Managers Functions

- Create and maintain Inmate Central Files on Federal inmates being boarded in state facilities (State Boarders).

8.   INMATE CENTRAL FILE

   a.   Documents File.   Part of the Inmate Central Records System is defined in the Federal Register, September 16, 1976, Volume 41, No. 181, page 39918.

   b.   Creation.   Each Unit Secretary shall review the SENTRY Daily Log for unit assignments and create the Inmate Central File and Privacy Folder immediately after the assignment to a housing unit at the institution to which the inmate has been designated.
   Inmates who have been previously classified and who are subsequently transferred from other Bureau institutions ordinarily shall not require creation of another Inmate Central File.   Former files on individuals recommitted under the same sentence shall be reactivated.

   The six-position Inmate Central File Folder shall be used, along with a pressure-sensitive label.   Tattered or torn file folders should be replaced.   The General Services Administration currently supplies the Inmate Central File Folder.   Specific details and ordering instructions may be obtained from the institution Business Office.

   c.   Location.   The Inmate Central File is maintained at the current or last institution or facility of confinement.   Once the inmate has been released, refer to the Inmate Systems Management Manual for further instructions.

   d.   Categories of Individuals Covered.   Current and former sentenced inmates under the custody of the Attorney General of the United States to include Study and Observation cases.

   e.   Organization.   The six-position Inmate Central File folder provides for the organization of filed material, topically, as follows:

| **Section No.** | **Topic** |
|---|---|
| 1. | Sentence Data/Detainers/IFRP |
| 2. | Classification/Parole Material |
| 3. | Mail, Visits, and Property, etc. |
| 4. | Conduct, Work and Quarters Reports |
| 5. | Release Processing |
| 6. | General Correspondence |

In addition, a Privacy Folder, attached to the top of Section 5, provides a receptacle for storing Freedom of Information Act (FOIA) Exempt material.  The department responsible for ordering Privacy Folder inserts shall consult the institution Business Office to ensure proper procedures are followed.

   f.  Standardization of Inmate Central File Material. Standardization streamlines the filing of material, expedites accessibility and retrieval of data, and eliminates the need to rearrange files of inmates transferring into the unit.

      (1)  Responsibilities.  All institutions shall comply with the standardized system for organizing material in the Inmate Central File and Privacy Folder.

      Unit Managers are ordinarily responsible for ensuring all Inmate Central Files and Privacy Folders are organized as stated herein.  At institutions retaining a centralized file system, the Warden shall designate staff accountable for standardized filing of material.

      (2)  Requirements.  Detailed instructions for the order of routine filing are included in Section 9 of this Program Statement, with the filing of FOIA Exempt materials in the Privacy Folder detailed in Section 10.

      (3)  Storage.  Files shall be stored alphabetically.

   g.  Multiple Volumes.  When it becomes necessary to establish a second volume of an inmate's Central File, the second volume shall be created containing all the original core documents required for an initial file.

(1)  Core Documents.  Core documents shall include:

*
      (a)  CIM White Card                                              *
      (b)  Intact FOIA Exempt section from primary volume
      (c)  J&C
      (d)  PSI
      (e)  Chronological Disciplinary Record for Incident
           Reports written before December 1, 1990.

(2)  <u>Privacy Folder</u>.  A new Privacy Folder shall not
ordinarily be re-created.  Staff shall remove the FOI Section
from the preceding volume and insert it in the newly created
volume.

(3)  <u>Controls</u>.  Multiple volumes shall be clearly identified on
the check-out cards, file tabs, and on the file cover (i.e.,
Volume I of III, Volume II of III, etc.)

- A Check-out Card (BP-387) shall be used for each
  volume.

- If all volumes of multiple files are not maintained in
  the regular Central File cabinet, the current volume is
  to be marked as to the location of the other volume(s).

- Each **volume** shall be accounted for daily.  Thus the
  total file count will exceed the inmate count when
  multiple volumes exist.

- At the beginning of each month, a list of inmates with
  multiple volume files is to be included on the file
  count record noting the number of volumes.  Addition
  and deletion of files and volumes of files will then be
  noted on the file count record for the remainder of
  that month.

- Multiple volume files shall be created chronologically,
  maintaining the six-position file's order.

9.  <u>INMATE CENTRAL FILE ORDER</u>.  The six-position Inmate Central
File provides for the organization of filed material.  Material
shall be filed in the following order in the Inmate Central File
(top to bottom) by sections when the document, report, etc. is
appropriate, available, and disclosable to the inmate.

   a.  <u>Section One:  (Sentence Data/Detainers/Inmate Financial
Responsibility Program)</u>

\*        (1)  CIM White Card                                      \*
         (2)  SENTRY Sentence Computation Record (most current)
         (3)  Copy of Judgment in a Criminal Case or Judgment and
              Commitment Papers (all)
         (4)  Financial Responsibility SENTRY Module Contract (most
              current)

            (a)  Installment Schedule Agreement for Unpaid Fines form
                     (if applicable)
            (b)  Cost of Incarceration Fee form (BP-546) (if
                 applicable)
            (c)  Correspondence relating to IFRP
                 i.e. (BP-445's, Financial Litigation Unit
                 Correspondence)

  (5)   Extra Good time Recommendation (BP-390) (all)
  (6)   Statutory Good Time Action Notice (BP-389) (all)
  (7)   Good Conduct Time Action Notice (BP-448) (all)
  (8)   Detainer Action Letter (BP-394) (all)
  (9)   Interstate Agreement on Detainer forms (BP-235 through 239) (copy, if applicable)
 (10)   FBI Fingerprint Report (RAP Sheet) or request for RAP Sheet; no Bureau run NCIC/III records in disclosable portion of File
 (11)   Disclosable AO-235/AO-245/USA-792, (with response, if applicable)

b.  <u>Section Two:  (Classification and Parole Materials)</u>

  (1)   Inmate Activity Record form (BP-381); new form for each institution (all)
  (2)   In-Transit Data form (most current)
  (3)   Copy of Transfer Order (BP-399) (all)
  (4)   Copy of Redesignation Approval, SENTRY Clearance Data - no separatees listed (most current)
  (5)   Request for Transfer (all)
  (6)   Request for Management Variable Application/Updated Expiration Date or PSF Waiver (all)
  (7)   Custody Classification form (most current; all exception cases resulting in custody reductions)
  (8)   Parole forms (in chronological order) (all)

    (a)   Parole Commission Appeals, National/Regional
    (b)   Notice of Action
    (c)   Notice of Action, Part II-Salient Factor
    (d)   Waiver of Notice, Representation or Disclosure Staff Representative form
    (e)   Notice of Hearing
    (f)   Parole Application/Waiver (I-24)
    (g)   Background Statement of Inmate (I-32)
    (h)   Attorney Witness Election forms (I-16) and (CJA 22)

  (9)   Related Correspondence to Parole Commission (all)

    (a)   Parole Violation Warrant Application
    (b)   USPO packet excluding duplication

 (10)   Most current Progress Report
 (11)   Classification Material

    Program Review forms (BP-191) (6 most current)

 (12)   Treaty Transfer Packet (copy, if applicable)

    (a)   Transfer Inquiry form (BP-297) (if applicable)
    (b)   Treaty Transfer Case Summary (if applicable)

PS 5800.11
CN-01 12/31/97
Page 8

(13) Executive Clemency Report (if applicable)
(14) Request for PSI (U.S. District Courts Only)
(15) Security Designation form (BP-337)
(16) Presentence Investigation Report (PSI) (U.S. District Courts Only)/Probation Violator Report
(17) Correspondence relating to PSI (disclosable)

c. Section Three:  (Mail, Visits, Property, etc)

(1) Extra Photographs, stored in envelope (most current)
(2) Social Security Card, Drivers License, etc. (stored in envelope; send to R&D upon release)
(3) Approved Visiting List (most current)
(4) Correspondence relating to Visiting List (disclosable)
* (5) Telephone List (most current since the last Program Review) *
(6) Telephone Number Request form (BP-505) (all)
(7) Correspondence relating to Telephone List (disclosable)
(8) Inmate to Inmate Correspondence Approvals (all)
(9) Acknowledgment of Inmate (BP-407/408) (all)
(10) Inmate Personal Property Records (BP-383) (all)
(11) Confiscation & Disposition of Contraband forms (BP-402) (all)
(12) Commissary Issue Card form (most current)
(13) Request/Authorization to Mail Inmate Packages (BP-329) (maintain for two years)
(14) Authorization to Receive Packages or Property (BP-331) (maintain for two years)
(15) Injury Report - Inmate  (BP-S140.016) (all)
(16) Uniform Basic Safety Regulations (BP-169) (most current)
(17) Institution AIDS Training (most current)
(18) Admission and Orientation Program Checklist (all)
(19) Intake Screening form/(Rights & Responsibilities (all)
(20) Medical/Psychology Intake Screening Form (BP-354) (all)

d. Section Four:  (Conduct, Work, Quarters Reports, etc)

(1) Chronological Disciplinary Record for Incident Reports written prior to December 1, 1990
(2) Incident Reports, UDC Actions (all)
(3) Discipline Hearing Officer Packet; file each UDC/DHO action as a packet in chronological order (all)

(a) Incident Report (BP-288)
(b) Inmate Rights at Discipline Hearing (BP-293)
(c) Notice of Discipline Hearing Before the DHO (BP-294)
(d) Duties of Staff Representative (BP-306)
(e) Waiver of Appearance (BP-307)
(f) Discipline hearing Officer (DHO) Report (BP-304)
(g) DHO Checklist (BP-447)
(h) Administrative Detention Order (BP-308)
(i) Special Housing Unit Record (BP-292)
(j) Special Housing Review (BP-295)

PS 5800.11
September 8, 1997
Page 9

(k)  Temporary Placement in Disciplinary Segregation
Order (BP-321), including any supporting disclosable
documentation

(4)  Work Performance Rating forms, UNICOR and IPP (purged
after incorporated into the inmate's progress report)
(5)  Request for Vacation (most current)
(6)  Education Data

(a)  Education Data Transcript (most current)
(b)  High School Diploma or proof of its attainment GED
(c)  V/T Certificates (all)
(d)  Other Education Related Documents

(7)  Drug Abuse Program correspondence (most current
on top)

e.  Section Five:  (Release Processing)

(1)  Institution/Unit Release Preparation Checklists (most
current)
(2)  Program Review Report (BP-571) (if applicable; original
report regarding Notification of Prisoner Release)
(3)  Notification of Community Treatment Programs form (if
applicable)
(4)  USPO Plan Approval (most current)
(5)  Parole Certificates, Parole form (H-13) (all)
(6)  Parole Certificate Request form (most current)
(7)  Release Correspondence (Pre-release progress report
receipts) (most current)
(8)  Notice of Release and Arrival, Parole form (I-13) (all)
(9)  Deportation Notice (Parole form 55) (all)
(10)  Supervision Release Plan form (BP-522) (all)
(11)  Inmate Education Data Transcript (most current)
(12)  Certificate of Mandatory Release, Mandatory Release to
Special Parole, Special Parole or Court Designated
Parole (Parole form I-33) (all)
(13)  Release Authorization (BP-392) (all)
(14)  Gratuity forms (BP-189 or BP-379) (most current)
(15)  Notification of Prisoner Release Form (if applicable)
(16)  Release of Immigration Detainee with Supervision to
follow (BP-325) (all)
(17)  Conditions of Probation and Supervised Release,
(Probation form 7A) (if applicable)
(18)  CCC Terminal Report (if applicable)
(19)  CCC Packet (most current)

(a)  Furlough Approval and Record form (BP-291) (CCC Only)
(b)  Institution Referral for CCC Placement (BP-210)
(c)  Acceptance/Denial Documentation from CCM
(d)  Exception Memorandum from Warden done prior to
April 30, 1993.

    (e)  Exclusion memorandum from the Warden with rationale for exclusion from CC programs/Inmates refusal to participate in CC programs memorandum
    (f)  Medical Evaluation for CCC Placement (BP-351)
    (g)  Community Based Program Agreement

  (21)  Prior Release Documents (file entire packet together)

f.  <u>Section Six:   (General Correspondence) - Chronological</u>

  (1)  Correspondence, General
  (2)  Furlough Packet (all)

    (a)  Furlough Questionnaire USPO (BP-302)
    (b)  Furlough Questionnaire
    (c)  Furlough Approval form (BP-291)
    (d)  Correspondence Regarding Furlough
    (e)  Furlough Evaluation

  (3)  Record of Escorted Trip (most current)
  (4)  Inmate Request to Staff Member (BP-148) (all)
  (5)  Congressional Correspondence - Entire Packet (all)
  (6)  Consent forms - General (all)

<u>Note</u>: No Administrative Remedy Responses should be maintained in the Inmate Central File.  See the Program Statement on the Administrative Remedy Program for file maintenance.

10.  <u>PRIVACY FOLDER</u>.  The Privacy Folder is to be located on the top of Section 5 of the Inmate Central File.  The Privacy Folder contains two sections.

• FOIA Exempt material for Section I shall include Central Inmate Monitoring documents and Victim/Witness Information.

• Section II shall include other non-disclosable material from the Inmate Central File.

All material not considered FOIA Exempt shall be filed in the appropriate section of the Inmate Central File.

a.  <u>Section One:  Central Inmate Monitoring and Victim/Witness Notification Packet</u>

  (1)  CIM (BP-339) (most current)
  (2)  CIM (BP-340) (all)
  (3)  CIM Documentation (all)
  (4)  Cover Memorandum to Appropriate Review Authority (all)
  (5)  CIM Approval Letter from Appropriate Review Authority (all)

PS 5800.11
September 8, 1997
Page 11

    (6)   CIM Clearance Request with corresponding SENTRY
         Clearance Data Display.
    (7)   Victim/Witness Protection Packet - Notification Log
         (all)

      (a)   Initial Notification Letter
      (b)   All Other Victim/Witness Notification Documents (all)

  b.  <u>Section Two:  Miscellaneous Non-Disclosable Materials</u>

    (1)   Secret Service Card
    (2)   Non-Disclosable PSI, AO 235, 245, USA 792 and
         Sentencing Memo/Transcript
    (3)   FOIA Exempt In-Transit Data form (most current)
    (4)   Psychological/Psychiatric Intake Screening form (BP-435
         and 436) (Only FOIA EXEMPT) documents determined by
         Psychology staff.
    (5)   Visitor Information form (BP-309) (all)
    (6)   Visitor Authorization for Release form (BP-310) (all)
    (7)   Request for Conviction Information form (BP-311) (all)
    (8)   Any Materials from the Central File which are FOIA
         Exempt are to be filed chronologically.
    (9)   Any other Materials that are FOIA exempt:

      (a)   Study and Observation Cases (all)
      (b)   Confidential Investigations (all)

11.  <u>U.S. PAROLE COMMISSION MINI-FILES</u>.  All facilities shall
adhere to the U.S. Parole Commission Rules and Regulations in
creating and handling these files.

   a.  <u>Origin</u>.  The Unit Secretary shall create the Parole
Mini-file at the time of admission for all commitments who are
eligible for parole and will eventually be released with U.S.
Parole Commission supervision to follow.

   Files on inmates who do not receive a hearing or are not
granted parole but who have a mandatory or special parole term
after release shall be sent immediately after the inmate's
release to the appropriate U.S. Parole Commission Office which
has supervision responsibility.

   Parole Mini-files shall be created for adult sentences imposed
under 18 U.S.C. 4205(f) and the YCA provision 18 U.S.C. 3401(g)
of the Federal Magistrate Act of 1979.  Files shall also be
created for all inmates serving sentences imposed under 21 U.S.C.
848 (Continuing Criminal Enterprise) even though inmates
sentenced under such sentences are not eligible for parole.  Upon
the inmate's release from confinement, these files shall be sent
to the appropriate U.S. Parole Commission Office supervising the
inmate.

PS 5800.11
September 8, 1997
Page 12

(Supplies of file folders and pressure-sensitive folder labels are obtained from the appropriate U.S. Parole Commission Office.)

b. <u>Maintenance and Use</u>.  These files are to be maintained at the same institution at which the inmate is confined.  Prior to the initial parole hearing, the files are to be shipped via certified mail or via United Parcel Service, to the appropriate U.S. Parole Commission office.  Following review at the U.S. Parole Commission, the file is returned to the institution for storage until the hearings occur.

When practical, after hearings, U.S. Parole Commission examiners may take smaller quantities of these files with them when they return to their office.  Otherwise, other staff the Warden designates shall clip the Commission Order, hearing summary, tape and notes, and other hearing documents to the inside of the Parole Mini-file before transmittal in the order indicated.  These shall be delivered to the institution mailroom for shipment.  Hearing tapes shall be boxed and sent as soon as possible to the U.S. Parole Commission office.

When an inmate waives parole consideration or no hearing is conducted, the Parole Mini-file shall be forwarded upon the inmate's release to the U.S. Parole Commission office provided the inmate is released to the U.S. Parole Commission's supervision.

c. <u>Contents</u>.  The contents of the Parole Mini-files are to be limited to the following:

(1)   SENTRY Sentence Computation Record
(2)   FBI Fingerprint Record (RAP Sheet)
(3)   Judgment in a Criminal Case or Judgment and Commitment Order
(4)   Pre-Sentence Report (if disclosable)
(5)   Prosecuting Agency Report
(6)   Classification Material
(7)   Medical, Psychological and Psychiatric Reports (if separate from classification material and disclosable)
(8)   U.S. Attorney/Judges Report (USA-792, AO-235)
(9)   Progress Report (most current)
(10)  Escape Reports
(11)  Front Side of all Incident Reports with Discipline Hearing Officer Packet Given to Inmate
(12)  Background Statement of Inmate (Parole form I-32)
(13)  Application for Parole (Parole form I-24)
(14)  Pre-Release Matters:

(a)   Correspondence regarding release planning and aftercare arrangements.
(b)   Correspondence regarding detainers.
(c)   Release Certificates where applicable.

    (d)   Recommendations relative to CCC or halfway house
         transfer including adjustment reports.
    (e)   Committed fine documents.
    (f)   Other pre-release matters.

(15)   Correspondence Relative to Parole Consideration
(16)   Policy established within the U.S. Parole Commission
governing material emanating from the Commission and
needed in the files.  All material received from the
Commission shall be filed.

<u>Note</u>:  FOIA Exempt Material shall not be placed in Parole
Mini-files.

e.  <u>Organization</u>.  Material shall be organized within folders,
by position, as follows with the latest date on top:

   (1)   <u>No. 1  Sentence Data</u>

     (a)   SENTRY Sentence Computation Record
     (b)   Prosecuting Agency Report
     (c)   Report of U.S. District Judge, AO-235 form
     (d)   Report of U.S. Attorney, 792 form
     (e)   FBI Fingerprint report (RAP Sheet)
     (f)   Judgment and Commitment Order

   (2)   <u>No. 2  Classification Material</u>

     (a)   Progress Report (most current)
     (b)   Escape Reports
     (c)   Front Side of an Incident Report
     (d)   Medical, psychological, and psychiatric reports, if
          disclosable
     (e)   Classification Materials
     (f)   Presentence Report of USPO (Probation form 2a), if
          disclosable

   (3)   <u>No. 3  General Correspondence</u>

   (4)   <u>No. 4  Parole Material</u>

     Notice of Hearing - Parole Application (current and
     previous ones), Representative, and Disclosable Request
     (Parole form I-24)

e.  <u>Maintenance, Security and Access, Responsibilities and
Procedures</u>.  The same rules as for the Inmate Central File shall
apply.  Institution staff shall file any of the material
described above that is received or generated prior to shipment
of the files to the appropriate U.S. Parole Commission office.
Routine filing material received or generated after that time

shall be forwarded to the appropriate U.S. Parole Commission
office for filing.  Commission staff shall file official
communications provided for Commission use through other
channels.

f.  Transfers.  As inmates are transferred between
institutions, each Parole Mini-file still held at the institution
shall be included in the same package with the appropriate
institution Inmate Central File as specified in the Security
Designation and Custody Classification Manual.

g.  Inmate Review of Parole Commission Files.  Inmates may
request review of the Parole Mini-file through the U.S. Parole
Commission in accordance with 28 CFR 2.55 and 2.56.

12.  MAINTENANCE, SECURITY, AND ACCESS PROCEDURES

a.  Responsibility.  At the Warden's delegation, the Inmate
Systems Manager (ISM) is the official custodian of inmate
records.  The ISM is responsible for file retention and disposal,
certification purposes, and court appearances when the record's
presence is required outside normal operating situations.

The Regional Inmate Systems Administrator, at the Regional
Director's delegation, shall have the same responsibilities at
the Regional Office level.

At institutions where inmate files are stored centrally, the
Warden's designee has supervisory responsibility.  Wherever
Inmate Central Files are decentralized to functional units,
supervisory responsibility shall belong to the Unit Manager and
his/her staff.  Although some delegation is necessary, the Unit
Manager is accountable for file security, control, and
maintenance.  A clear method of accountability is to be
established for the removal and return of files from this area
(see subsection b. of this Section).

b.  General Requirements.  The following rules apply at every
institution where inmates are confined and files maintained,
regardless of whether the Inmate Central Files are centralized or
decentralized.

(1)  Files may **never** be left unsecured or handled in such a
way as to be accessible to unauthorized persons.  Staff shall
ensure that inmates do not transport files and confidential
materials.

(2)  Files shall be stored in secure cabinets in secure
areas when not in use.  Fireproof cabinets shall be used or
acquired except for those institutions which have specifically
obtained a written exemption from the Assistant Director,
Correctional Programs Division.

PS 5800.11
CN-01 12/31/97
Page 15

(3)  Because of the need for files in emergency situations, all files shall be returned to the file cabinet prior to the close of business or tour of duty of each user.  **Files shall not be locked away overnight in private desks, offices, cabinets or vaults, since accessibility to these locations in times of emergency poses problems**.  Inmate Central Files for inmates not housed in the institution (i.e. inmates on writ, home confinement, or housed in CCCs) are also counted on the same basis.  These files shall be kept in a separate section of the file cabinet to better facilitate file accountability.

(4)  An Inmate File Check-Out Card (BP-387) shall be prepared for each volume and remain with that volume.  The card is to be placed in the file cabinet with the volume, and each user shall sign and date the card when a volume is removed and leave the card in the volume's place.  This system provides a tracking device when files are missing or needed for other purposes and improves the ability to take inventory.

(5)  All Inmate Central Files shall be counted any time that Central File cabinet is unlocked.  For example, if staff are on duty and open a file cabinet, all the files in that particular file cabinet must be counted that day.  Conversely, if staff are on duty but have no need to open the file cabinet, the files do not have to be counted.  Staff shall indicate "file not opened", initial, and date the file count record.  The following information shall be included in the file count record:

- the date/time of the count,
- total volumes counted,
- initials of the counter, and
- reasons for any changes since the previous day's count.

A name roster **and census** count must be conducted at least weekly.  This count consists of accounting for each file by securing a name roster printout from SENTRY and comparing the files in the cabinet with the name roster.  After completion, the printout shall be initialed, dated, and maintained for 90 days.  The file count record shall be maintained for a period of 2 years.

c.  Security Level Requirements

(1)  Inmate Central Files in Minimum and Low Security Level institutions may be maintained securely within the functional unit in a secure manner at the Warden's discretion.

(2)  Inmate Central Files in Medium Security Level facilities may be maintained securely within the functional unit at the Regional Director's discretion and approval.

PS 5800.11
CN-01 12/31/97
Page 16

      (3)  Inmate Central Files in High Security Level facilities
\* may be maintained in either the functional unit with the Regional
Director's approval or, in a secure, centralized location.
Inmate Central Files maintained in a secure centralized location
do not require Regional Director approval.              \*

      (4)  The location and security of Inmate Central Files in
Administrative facilities shall be reviewed and a determination
made on a case-by-case basis with the Regional Director's
approval.

13.  <u>ROUTINE USES OF INMATE CENTRAL FILES</u>.  The routine uses of
Bureau Inmate Central Files are periodically published in the
Federal Register.  At the time of this Program Statement's
publication, those include:

  a.  <u>Routine Uses</u>.  Routine uses of these files are to:

      (1)  Provide an information source to officers and employees
of the Department of Justice who have a need for the information
in the performance of their duties;

      (2)  Provide an information source to law enforcement
officials for investigations, criminal prosecutions, civil court
actions, or regulatory proceedings;

      (3)  Provide an information source for disclosure of
information on matters solely of general public record, such as
name, offense, sentence data, and release date;

      (4)  Disclose information to contracting or consulting or
correctional agencies that provide correctional services for
federal inmates;

      (5)  Provide an information source for responding to
inquiries from federal inmates involved in Congressional
inquiries;

      (6)  Provide information relating to federal offenders to
the courts, including court officials and probation officers;

      (7)  Provide victims and/or witnesses, pursuant to
victim/witness federal legislation and policy, information
relating to an inmate's furlough, parole (including appearance
before the U.S. Parole Commission), transfer to a community
corrections center, mandatory release, expiration of sentence,
escape (including apprehension), death, and other such release-
related information;

      (8)  Provide state agencies or authorities, pursuant to
Public Law 98-135, identifying data of Bureau inmates for the

purpose of matching the data against state records to review the
eligibility of these inmates for unemployment compensation; the
requesting state is to erase the Bureau data after this
determination has been made;

(9)   Provide the Social Security Administration (SSA),
pursuant to Public Law 96-473, identifying data of Bureau inmates
for the purpose of matching the data against SSA records to
enable the SSA to determine the eligibility of Bureau inmates to
receive benefits under the Social Security Act; SSA is to erase
the Bureau data after the match has been made;

(10)   Provide the Veterans Administration (VA), pursuant to
Public Law 96-385, identifying data of Bureau inmates for the
purpose of matching the data against VA records to determine the
eligibility of Bureau inmates to receive veteran's benefits; the
VA is to erase the Bureau data after the match has been made;

(11)   Provide information from an inmate record to an
employee, former employee, or his or her designated
representative when such information is included in the
employee's or former employee's adverse or disciplinary personnel
action file with respect to proposed adverse or disciplinary
personnel action against that employee or former employee; the
employee's or former employee's adverse or disciplinary personnel
action file is covered by a government-wide system of records
published by the Office of Personnel Management (OPM) entitled
"Adverse Action Records, OPM/GOVT-3;" to protect the privacy of
the inmate, information transferred to the employee's or former
employee's adverse or disciplinary personnel action file will be
sanitized as warranted and/or appropriate protective orders may
be requested to prevent further dissemination; and

(12)   Provide an employee, former employee, or his or her
designated representative information from an inmate record
pursuant to regulations or order of any body properly trying the
merits of an adverse or disciplinary personnel action, including
an administrative agency, arbitrator, or court of competent
jurisdiction; to protect the privacy of the inmate, information
provided the employee, former employee, or his or her designated
representative will be sanitized as warranted and/or appropriate
protective orders may be requested to prevent further
dissemination.

b.   Release of Information to the News Media.   Information
which may be released to the news media and the public pursuant
to 28 CFR 50.2 may be made available from systems of records
maintained by the Department of Justice unless it is determined
that release of the specific information in the context of a
particular case would constitute an unwarranted invasion of
personal privacy.

c.  Release of Information to Members of Congress.  Information
contained in systems of records maintained by the Department of
Justice, not otherwise required to be released pursuant to
5 U.S.C. 552 may be made available to a Member of Congress or
staff acting upon the Member's behalf when the Member or staff
requests the information on behalf of and at the request of the
individual who is the subject of the record.

d.  Release of Information to the National Archives and Records
Administration.  A record from a system of records may be
disclosed as a routine use to the National Archives and Records
Administration (NARA) in records management inspections conducted
under the authority of 44 U.S.C. 2904 and 2906.

14.  DISCLOSURE OF INMATE CENTRAL FILE MATERIAL.  The Privacy Act
of 1974 sets forth a series of requirements governing federal
agency record-keeping practices intended to safeguard individuals
against invasions of personal privacy.  The Act forbids release
of information from agency records without a written request by,
or without the prior written consent of, the individual to whom
the record pertains, except in specific instances as described in
the Act.  Civil sanctions and criminal penalties are prescribed
for violation of the provisions of the Privacy Act.

It is, therefore, imperative that each Bureau employee be
knowledgeable of this Act's provisions, and conform his or her
conduct to the Act regarding the maintenance of records and the
release of information contained in those records.  The Program
Statement on Release of Information establishes procedures for
the release of requested records in the possession of the Bureau.

15.  INMATE REVIEW OF INMATE CENTRAL FILE.  An inmate has the
option to look at materials maintained in his/her Inmate Central
File.  This procedure is not required by either the Freedom of
Information Act or Privacy Act.  A request submitted under FOIA,
for example, is processed formally under Department of Justice
and Bureau guidelines for handling such requests, in light of the
specific statutory provisions.  By contrast, the information
contained in this section establishes an administrative procedure
for inmate access to records which can properly be shown to the
inmate in accordance with sound correctional practices and
concerns.

a.  Local Procedures.  Each institution and facility shall
issue local instructions to implement this section.  Local
procedures shall include but are not limited to those items
listed in Section 15.a. and 15.b. of this Program Statement.
Each Chief Executive Officer (CEO) shall decide on the
expeditious and efficient means to accomplish any necessary file
review.  The CEO must designate those staff who are responsible
for the:

PS 5800.11
September 8, 1997
Page 19

   (1)   initial review of all current files of the inmate
        population;
   (2)   receipt of inmate requests to review files, and the
        monitoring of the inmate review of files; and
   (3)   screening of all records and documents in the future as
        they are sent to the Inmate Central File for filing.

   Each institution may adopt its own procedures and forms for
submitting and acknowledging requests and for logging and
scheduling Inmate Central File reviews.

   b.  <u>Inmate Request and Review</u>.  Any inmate seeking to look at
his/her Inmate Central File shall submit a request to a staff
member, as designated in the local instruction.

- The inmate's request should be acknowledged.
- The inmate should be permitted to review the file whenever
  practicable.
- All file reviews must be done under constant and direct
  staff supervision.
- Those materials which have been determined to be non-
  disclosable shall be removed from the folder before inmate
  review.
- An entry shall be made on the Inmate Activity Record
  (BP-381) to show the date the inmate reviews the file.
  The staff member monitoring the review shall initial the
  entry and the inmate shall be asked to initial it.

   c.  <u>Inmate Challenge to Information</u>.  An inmate may challenge
the accuracy of the information in his or her Inmate Central
File.  Unit team staff shall take reasonable steps to
ensure the accuracy of challenged information, particularly when
that information is capable of being verified.  The inmate is
required to provide staff with sufficient information in support
of a challenge (names of persons to contact, government agency,
etc...).

   When an inmate provides such information, staff shall review
the alleged error(s) and take reasonable steps to ensure the
information is correct.

   For example, if an inmate challenges information in the
Presentence Investigation Report (PSI), staff should inform the
appropriate U.S. Probation Office (USPO) in writing of the
disputed information, and request that a written response also be
provided.  **USPO procedures, however, do not allow for changes or
addendums to be made to the Presentence Investigation Report
after sentencing since it is a court document.**

   If the USPO subsequently reports that the challenged
information, or some part thereof is not accurate, staff shall
attach the Bureau's inquiry and the USPO response to the

challenged document.  Staff shall file this information in the

PS 5800.11
September 8, 1997
Page 20

applicable section of the Inmate Central file, and also make a
notation on the Inmate Activity Record form (BP-381) to ensure
that future decisions affecting the inmate are not based on the
discredited information.

When the USPO verifies that the information in the PSI is
indeed inaccurate, as claimed by the inmate, staff should
subsequently review, and where indicated, correct Bureau
generated reports or data such as the Inmate Load and Security
Designation form (BP-337), the Custody Classification form
(BP-338), Progress Report, and any other reports that may have
been based on the PSI.  Bureau reports, data, or SENTRY
transactions should be corrected within a reasonable period of
time after identification as being inaccurate.

If the information source will provide a corrected document or
data, it should be immediately inserted in the file or data base
and the inaccurate information or document removed.  A notation
on the Inmate Activity Record form should acknowledge the
insertion of the corrected information or document.

d.  <u>Inmate Copies</u>.  Any inmate who wishes to receive copies of
disclosable materials from the file shall submit a request to
institution staff.  Within a reasonable time after the request,
institution staff shall provide the inmate copies of requested
disclosable documents maintained in the Inmate Central File.
Fees for the copies are to be calculated in accordance with the
Program Statement on Release of Information.

e.  <u>Privacy Folder</u>.  Records which have been determined, under
separately issued guidelines, to be excluded from inmate review
shall be placed in the Privacy Folder.  Normally, actual
placement of documents in the Inmate Central File is the Unit
Secretary's responsibility.  The Privacy Folder shall be placed
on top of section 5 in the Inmate Central File.

As materials from any source are submitted for placement in
the Inmate Central File, they are routed to an appropriate staff
member the Warden designated.  The Case Manager shall review the
materials, to ascertain whether to place them in the regular
sections, the Privacy Folder, or discard them.  Any document to
be excluded from inmate review must be stamped "FOI EXEMPT".  At
each Program Review and before an inmate reviews his/her Inmate
Central File, the Case Manager shall review the file to ensure
the proper location of forms and purge outdated or unnecessary
forms and/or documentation.

f.  <u>Parole Files</u>.  Parole Mini-files, examiner packets, and
pre-hearing assessments are not disclosable unless specifically
authorized by the U.S. Parole Commission.  The Parole Mini-file
and other hearing materials must be removed from the Inmate
Central File prior to inmate review.  The inmate may seek review

of those materials through the U.S. Parole Commission in
accordance with 28 CFR 2.55 and 2.56.

16.   DOCUMENTATION OF DISCLOSURES.  The Privacy Act of 1974
requires accounting for both written and oral disclosures of
information about inmates.  Except for disclosures of information
of records made to other Department of Justice employees, and all
components thereof, and for disclosures required by the FOIA
(i.e., public information), an accounting of disclosures of any
information concerning an individual contained in a system of
records maintained by the Bureau shall be kept in accordance with
the following guidelines:

   a.  Oral Disclosures.  Staff are to take the position that only
public information is to be released orally.  Form BP-171 is
designed to assist the person receiving an oral request for
information in accounting for the results of the request.  The
form may also be used to document information which is released
and not covered by the FOIA.

   A memorandum shall be prepared and retained in the file from
which the record is disclosed, or an appropriate notation will be
maintained in the file, attached to the recorded disclosed.

   b.  Written Disclosure.  Accounting for written disclosures is
made in the same manner as for oral disclosures, or may be made
by retaining a copy of the correspondence requesting the
information and a copy of the response in the file from which the
record is disclosed.

17.   TRANSFER OF RECORDS BETWEEN BUREAU FACILITIES

   a.  Transfer Out.  Procedures for processing all records,
including the Inmate Central File, are covered in the Inmate
Systems Management Manual.

   b.  Transfer In.  Inmate Systems Department staff shall receive
and process records on transferring inmates as follows:

      (1)  Judgment in a Criminal Case and Judgment and Commitment
Files shall be pulled for audit by the Inmate Systems staff;

      (2)  Medical records shall be sent to the Health
Services Administrator;

      (3)  Mental Health records shall be sent to the Chief
Psychologist/Psychiatrist;

      (4)  Inmate Central Files related materials and Parole
Mini-files, if any, shall be sent to the appropriate Unit
Manager.

  c.  Parole Violators, Mandatory Release Violators, Escapees
Files.  If the inmate is committed elsewhere, his/her files shall
be shipped immediately upon designation.  Files shall be prepared
for shipment the same as for transfer and mailed by **Certified
Mail, Return Receipt Requested**.  Files on these cases, if not
already received, shall be requested by telephone, BOPNet
GroupWise, or EMS, and shall be processed upon receipt the same
as for transferring inmates.

18.  REQUESTS FOR FORWARDING INMATE FILES.  All requests for
inmate files from individuals or agencies outside the Bureau
shall be referred to the ISM Department for review and action as
required in the Inmate Systems Management Manual.  Requests from
Bureau facilities shall also be referred to the ISM Department
for review.

Ordinarily, if an inmate's projected stay at another institution
(i.e., writs) is for 60 days or more, the parent institution
shall be contacted to forward the Inmate Central File to the
holdover institution.  This contact is to be documented and
should not require weekly follow-up.

19.  RETIREMENT OF INMATE CENTRAL FILES

  a.  Files on Expired Sentences.  Files on these sentences shall
not be combined with new sentence files.  However, they may be
retrieved for review and then returned to the Federal Records
Center after the review is completed.

  b.  Files Processing at Final Release.  The following
procedures shall be completed at the time of each inmate's
release.

  (1)  Inmate Central File folders shall be retained in the
unit for approximately two weeks after the inmate's release.
Files for inmates housed in halfway house facilities or community
release status (i.e. home confinement, community corrections
centers (CCC)) shall be maintained with the unit files until the
final release paperwork is received from the CCC.  This allows
for final release papers to be consolidated and filed before the
file is forwarded to the ISM Department for inactive file
storage.  Unit Managers are responsible for ensuring all required
documents are in the Inmate Central File prior to retirement of
the file.

  (2)  Inmate Central Files are preserved for 30 years after
the sentence expiration.  Therefore, following release from
service of the confinement portion of the sentence, medical,
mental health, and visiting records shall be forwarded to the
appropriate unit for consolidation with the Inmate Central File.
The consolidated file is then sent to the ISM Department.  The
Judgment in a Criminal Case/Judgment and Commitment file is

included in the consolidated file at retirement.

The outside of the file folder shall be stamped with the year of expiration of sentence and files shall be stored according to local procedures.  Expiration of sentence for this purpose is defined as the date supervision expires plus any special parole term, probation, supervised release, or the date released from confinement with no supervision to follow plus any special parole term.

(3)  Files designated for research purposes shall be forwarded to the Office of Research and Evaluation (ORE), Central Office and scheduled for disposal as ORE determines.  A notation shall be entered on the permanent alpha index card in each case to indicate to whom in ORE the file was sent.

(4)  Material received regarding inmates who have been released from serving their sentences shall be destroyed with the exception of death notices or certificates and copies of U.S. Parole Commission correspondence to the U.S. Marshals Service transmitting warrants and court orders or documents. Questionable material may be referred to the Case Management Coordinator, Inmate Systems Manager, or the Regional Correctional Programs Administrator for a decision.

c.  <u>Retention and Disposal of Inmate Central Files</u>.  Specific procedures for the retention and disposal of Inmate Central Files are contained in the Inmate Systems Management Manual.

20.  <u>INSTITUTION SUPPLEMENT</u>.  Each institution is to develop an Institution Supplement to include the following information:

a.  Designate the location of pretrial and INS file folders.

b.  Identify the pretrial and INS file folder accountability procedures.

<u>Note</u>:  These instructions should clearly set forth procedures to ensure the maintenance, security, and access responsibilities.

c.  Procedures to implement the inmate review of the Inmate Central File.

/s/
Kathleen M. Hawk
Director

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARLIN DAVIS                              )
                                          )
                    Plaintiff,            )        Civil Action No. 06-1698 (CKK)
                                          )
            v.                            )
                                          )
FEDERAL BUREAU OF PRISONS et al.          )
                                          )
                    Defendant.            )
_____ )

ORDER

Upon consideration of defendant's motion to dismiss or in the alternative for summary

judgment, and plaintiff's response thereto, it is hereby

ORDERED that the motion is GRANTED, and plaintiff's complaint is DISMISSED.

Date: _____          _____
                      UNITED STATES DISTRICT JUDGE